## MARY MATIRKO
### vs.
## FRANCIS E. KORN, JR.

Superior Court    New Haven County    File #46722

Present: Hon. JOHN A. CORNELL, Judge.

D. M. Reilly,    Attorney for the Plaintiff.

Pond, Morgan & Morse,    Attorneys for the Defendant.

**MEMORANDUM FILED DECEMBER 9, 1935.**

CORNELL, J. Among the several reasons advanced as cause for setting aside the verdict, one of the most important is that the evidence shows that plaintiff was guilty of contributory negligence as a matter of law.

Among other facts which the jury might permissibly have found from the evidence, either directly or by reasonable inference, are the following: that when the traffic lights facing east and west on Center Street showed red (which in turn was green for north and south bound traffic) the plaintiff stepped off the north curb and proceeded in a generally southerly direction toward the opposite side of the street; that standing on the sidewalk on the north side of Center Street before starting to cross it, she could have seen a car with headlights glowing if it faced her, in spite of the snow which was falling, at least, two hundred feet away; that after the traffic light had turned and before she stepped off the sidewalk and looked west on Center Street and at that time there was no traffic whatever coming east, within the range of her vision; that in pursuing her way to the south side of Center Street she did not again look toward the west until she had reached a point close to the southerly or east bound trolley tracks at which time she looked first east and then west (the latter being the direction from which defendant's car came) but did not see defendant's car and at no time perceived its approach until her girl companion cried out at a time when plaintiff was about two feet south of the most southerly trolley rail, whereupon plaintiff instinctively pulled her body back, but in so doing thrust her head forward with the result that her face came in contact with ventilator glass on the left front door window of defendant's car.

If the jury believed, as they might properly have done, that before plaintiff commenced to cross Center Street the traffic lights were turned against east and west bound traffic and that she did not see defendant's car coming east within the range of her vision at that time, they might have not unreasonably inferred from these facts that defendant's car had not then entered the intersection and that if it in fact was headed east at that time it was, at least, two hundred feet away from the east line of the intersection which, in turn would have placed it approximately one hundred feet west of the west line of the intersection at which latter distance defendant would have been amply able to and bound to refrain from entering the area of the intersection in recognition of

the traffic signal light then warning him not to do so.

Under such findings, plaintiff was entitled to rely to a reasonable extent upon the knowledge of and obedience to, the law on the part of traffic coming east at such approximate distance from the intersection. **Viretto vs. Tricarico, 116 Conn. 718, 719; Grannatasio vs. Nealon, 117 Conn. 696, 697.**

She was not required, under such conditions to maintain a constant vigil for traffic coming from the direction that defendant did, as she crossed the street, under pain of being found negligent as a matter of law. **Gamba vs. Strickland, 116 Conn. 726, 728.**

Her conduct in failing to do so, until she approximately reached the south trolley tracks presents a question of fact, rather than one of law. **Gamba vs. Strickland, supra; Catricola vs. Hayes, 114 Conn. 716, 717; Parcella vs. Finan, 113 Conn. 730; Mascola vs. Maynard, 119 Conn. 694, 696; Cohen vs. Eastern Stages, Inc., 116 Conn. 210, 213.**

Whether or not she was justified, as defendant claims the evidence to be, in not looking again to her right or left until "just before she got to the track", and in so conducting herself that at the time she looked east and was just about to look west her companion cried out, would seem to present questions which under the most favorable interpretation of the evidence from plaintiff's standpoint, lie in the realm of fact, rather than that of law.

So, also, if the evidence admits of the construction that plaintiff actually looked to the west when a few feet from the point where the collision occurred but did not see the defendant approaching. It may be granted that on a clear night, with no other traffic or obstacles to intercept her vision, plaintiff should have seen the defendant car coming toward her at any distance it might have been away from her at any time within three to five seconds, at least, before it struck her if its lights were aglow and its lenses free of anything that would impede the projection of their rays. Her conduct in either failing to look or failing to see if she did look, under such conditions in traversing a highway where traffic was unregulated would probably be accounted contributory negligence as a matter of law if it materially contributed to her injuries.

Two factors, however, might be found by the jury to have operated to excuse plaintiff's conduct in failing to see defendant's car, if she did look in the direction from which it was coming and failed to observe its approach.

Into both of them enter the influence of surrounding conditions. Thus, at twenty miles per hour, the defendant was moving at a speed of about 30 feet per second. An interval of but three seconds from the time plaintiff thus looked until the instant of contact would have placed defendant's car almost a hundred feet away from her when she looked and thus close to or immediately west of the west line of the intersection.

Granted, too, that defendant's headlights were alright—were their lens clear? The car had been standing while the owner attended a moving picture exhibition during all of which time it was snowing heavily. Might not the jury have found that the snow which collected elsewhere on defendant's car, did not fail to do so, also, on its headlight lens; that defendant had failed to clean these off and the short distance which the car had run before the collision was not ·sufficient to melt or vibrate it off, as a consequence of which, depending, of course, on the amount of snow deposit clinging to the lenses, the glow of the lights was dulled or obscured; and that the approach of a car with its lights in such a condition in the midst of a snow fall would not be discernible to one using ordinary care at such distance as the jury might have found it was from plaintiff at the time plaintiff looked toward it?

On the other hand if the jury found on any permissible theory, that plaintiff had the right of way to pass safely through the intersection or on the cross-walk adjoining it, ahead of defendant's car; that she looked to the west at a time when, had she sufficiently concentrated her attention she could have seen defendant's car in time to have halted and avoided the collision but did not see it or perceive the likelihood of its presence because she was conversing with her companion or her attention otherwise distracted—even then, while an exceedingly close question would be presented, it is doubtful if such momentary inadvertence on plaintiff's part would be negligence as a matter of law. **Lawson vs. Waterbury, 115 Conn. 716, 718.**

The vigilance which plaintiff was required to exercise to acquit herself of contributory negligence was, of course, to be measured in degree by the conditions surrounding her and under which she acted.

With no other traffic in sight, with the traffic light in her favor before she stepped off the north curb; with the defend-ant's car not visible to her when she proceeded onto the cross-walk adjoining the intersection; shielded by a reliance to a reasonable extent that if traffic approached from the west after she left the curb it would obey the traffic light then set against it and not enter the intersection until it changed—all facts which the evidence did not preclude the jury from reasonably finding—then the question of whether the plaintiff exercised the degree of care incumbent upon her (whether in looking in the direction from which defendant approached or not, or in the degree of care and attention with which she looked, if she did) seems one that was necessarily the jury's and not the court's.

The exceptions taken to the charge to the jury present questions of law for the court of review, rather than for that court where the subject of controversy originates.

Defendant claims error in that portion of the charge which may be summed up in this language:

"Should you, however, conclude from all of the evi-dence that at the time defendant's car entered the inter-section, the traffic light facing him was red, then it was defendant's duty to stop his car before entering the inter-section and proceeding through it and his failure to do so would be in violation of the statute and would con-stitute negligence on his part."

An instruction to this effect, following what was said in **Rose vs. Campitello, 114 Conn. 637**, was approved in **Fitz-gerald vs. Savin, 119 Conn. 63, 67**. It there formed part of an exposition of a driver's duty under the statute (**General Statutes, Rev. 1930, #394**) in approaching an intersection through which traffic is regulated by lights where a yellow or "caution" signal is flashed between the green and red.

The evidence in the instant case did not disclose with such definiteness as might be wished, whether at the time plaintiff was injured the traffic lights at the intersection in question

contained a yellow or "caution" signal or whether the system comprised a green and red light, only, as it now does and has for a long time. The request of the court during the trial that this circumstance be more definitely established by agreement of counsel or evidence sufficient for the purpose, did not yield results; the police official whom counsel relied upon for authentic information, being able to say only that a yellow light had been used at the intersection, that it had been eliminated but he was unable to say when. This statement fails to negative plaintiff's that she saw a yellow light follow the green and in turn succeeded by a red one for east and west bound traffic before she stepped from the sidewalk and into the travelled portion of Center Street, and in some degree serves to support plaintiff's statement that there was a yellow or caution light flashed between the other two lights.

However, in neither the testimony for the plaintiff nor in that for the defendant, is any operative effect or influence attributed to the presence of a yellow traffic light. Plaintiff in her testimony mentions one, but states that she did not step into the highway until the light was green for traffic proceeding in the direction in which she went, while defend-. ant insists that the green light faced him when he entered the intersection. Neither contends that his conduct was influenced by a yellow or "caution" signal.

If there was such a signal light it would seem that the instructions given as concerns the duty of an operator when faced with a red light, following it, were correct, or, at least, did not mislead the jury.

Defendant, apparently, claims that there was no yellow or "caution" signal light and, consequently, if the light facing defendant as he came to the intersection changed from green to red when he was at a point so close to the intersection that a step could not be made in safety, he was entitled to enter and pass through the intersection.

Whatever merit or lack of it there may be in this contention, it is purely academic insofar as this case is concerned. For defendant at no time claimed that such a situation confronted him, but on the contrary, that not only was the light facing him green when he entered the intersection, but that it was green all the time from the point a block away to the west where he had turned around to go east toward the intersection. Moreover there is no evidence from which the

jury could have found that only red and green traffic signal lights were used at the intersection in question.

That part of the charge to which exception is taken that dealt with the jury's prerogative to draw inferences from facts which they might find established in the evidence and so to test the claims of the parties—particularly that of plaintiff— as to whether the light was green or red facing defendant when he entered the intersection, was intended to be illustrative only of means which might be at the disposal of the jury to determine which of the two conflicting versions as respects the position of defendant's car with respect to the light facing it when it entered the intersection, was more probably true.

It may have been of little or no value for this purpose and even clumsily put, but it is believed that it was attended with abundant caution as concerns any conclusions that might be drawn from its employment and it is not easily discerned how it could have affected defendant prejudicially.

As in all charges to juries one party or the other may feel that reference to various portions of the evidence upon which he relies should be made in discussing questions to which such evidence relates. It is hardly practicable, however, to review all of the evidence in a case of this kind, and, probably not desirable.

Here it was sought only to state the claims of the parties and to refer to the evidence only in that connection. The allegedly variant statements made by the plaintiff prior to her appearance in court, failure to refer to which in the charge is claimed to be prejudicial error, were matters affecting the credibility of the witness. It was introduced not to show how the accident was caused to occur, primarily, but to show that it did not occur as plaintiff testified it did and thus to weaken or destroy the version which she gave on the witness stand. In stating the respective claims of the parties to the jury and leaving the latter to recollect the testimony and evaluate it, it is believed that the court went as far as it properly should go.

It is not perceived that the other reasons urged in support of the motion require discussion.

As to the damage awarded, it is evident that the principal

item involved compensation for the scar on plaintiff's face.

This extends practically from the angle of the jaw on the right side of the face to one-half inch of the angle of the mouth. It is roughly 3¼ inches in length and about 3/16 inches wide throughout its length. It is permanent and will not yield to any reasonable entertainable theory of plastic surgery.

Since it has a blood tumor base, it is not unlikely that efforts to reduce its disfiguring effects might result in a worse condition being produced. As it is now, it will substantially remain permanently and it has now whitened out as much as it ever will.

All the foregoing is a summary of expert testimony introduced by plaintiff, to combat or qualify which defendant opposed no evidence.

Plaintiff reached her eighteenth birthday on April 27th, 1935 and is now a senior at high school.

After making allowance for the pain and suffering attending other injuries of a minor character, the jury were required to assess for the same element, both physical and mental directly resulting from the injury to her face (which involved a cut where the scar is which severed the cheek muscles almost through to plaintiff's mouth. There was testimony that plaintiff suffered a great deal of pain for a period of 4-5 weeks, following the accident.

Likewise, as concerns the mental effects of the consciousness of the presence of the scar and the knowledge that it will always remain as it is.

The jury had ample opportunity to observe both the plaintiff and the scar. That they might have found her to be a young lady of comely appearance and good deportment and the scar extremely disfiguring and productive of all the mental upsets that consciousness of its continued presence might very reasonably be expected to produce in the mind of a young woman of her age and situation, goes without saying.

Considering all of the factors entering into the assessment of damages, it is not felt that the amount awarded is excessive. To order a remittitur would really amount to substituting the court's judgment for the jury's if the court's materially differed from the jury's which it does not.

Careful consideration of all of the reasons urged by defendant in support of its motion—some of which are pressed with much zeal and evident sincerity—leads to the conclusion that if error was committed in the charge or it was insufficient in any respect, the situation is not such as would justify the trial court in determining that defendant was so harmed as to sanction setting the verdict aside.

There was, palpably, ample evidence upon which to predicate the finding that defendant was negligent.